Mr. Masucci? Yes. Good morning, Your Honors. May it please the Court? I am Thomas Masucci. I represent Mr. Longhao Lee. This is a petition for review. Can you speak up or move the microphone? I'm having trouble hearing you. Is that better? That's better. Okay. Sorry. And with the permission of the Court, I would respectfully ask to reserve five minutes. Your Honors, if I may take a minute to just briefly review the issues that are not under review, at least from my perspective. First would be the agency pre-permitting the asylum claim as untimely. We're not contesting that. The finding that there was no past persecution, we're not contesting that. And also, we would argue the finding, although not made terribly explicitly by either the IJ or the Board, that Mr. Lee was credible. I don't think credibility is an issue here either. The issues that are before the Court seem to me to be nexus, burden of proof, and related to that would be standard of proof. The Board argues that the danger that Mr. Lee would face if he were to return to China would not be on account of a protected ground, and this is fleshed out in a couple of ways, although I would argue in the end not correctly. The first is that any punishment that he would receive if he were to go back to China would be as a result of the fair administration of laws of general applicability. The first thing I'd like to look at is this idea that there is a Chinese law that outlaws what Mr. Lee did. We made this argument briefly in our administrative appeals brief below. I didn't really make the argument that strongly or that clearly in the brief before this Court, but as I indicated in our administrative appeal brief, there's no record evidence that there is any such law regarding the aiding of migrants or refugees beyond Mr. Lee's inexpert assertion that what he did was illegal. We did argue in the brief before this Court that China's pattern of China's acts regarding these North Korean refugees are violative of international humanitarian law, and as is noted in the record on page 227, a background report from the crisis group points out that China is a signatory to the 1951 Convention on Refugees and its 1961 Protocol, and therefore has an obligation to respect the principle of non-refoulement to protect asylum seekers or potential asylum seekers. This... Are you saying that if there is no such law, then that only not only undermines that causative element, but then raises an inference that it is on account of political opinion? I mean, it might be that that doesn't carry the tide, but how do you then get to say that that, the fact there is no law then constitutes proof that this was, of course, based upon political opinion? Well, that's... Your Honor, you're asking about the second part of the nexus equation, which would be Lee's political beliefs. Right. We argued that his act in the context of Chinese society, which I think probably most easily be characterized as a humanitarian act, given China's clear anti-humanitarian approach to victims such as the people that are coming from North Korea and living in those regions of China, that his very acting out this humanitarian impulse is making a political statement. But if it is on account of his political opinion, we would have to decide that when he did this, it wasn't because he believed he was doing something nice or wonderful or that, you know, it was charitable and he should be doing. But then when he did it, it was on account of his political opinion. So don't we have to look not at the way this act might be perceived by someone, but don't we have to divine a little bit more clearly his motivation? I don't believe so, Your Honor. I mean, courts, and I believe this court as well, and the board, has recognized imputed political opinion as a basis for a claim. And, again, given the context. It is a perception. Correct. And I would also argue that substantively in the context of China regarding this issue, acting as a humanitarian is taking a stand that is completely at odds with where the Chinese government is at with this. So I would argue both in terms of the law, whether or not the law exists. I think there's pretty clear evidence that it doesn't. And if I may. His colleagues were put in prison. Does he know exactly what the charge was on that? No, he doesn't. He has no information. He had no contact with them. So is it they're in prison? This one, correct, correct. And received a 10-year sentence. Correct. So you're saying any time someone in China does something that is essentially humanitarian, because of the context and the government, there's really no need for proof. You can automatically say, aha, if he's punished, it's because of political opinion. Is that your argument? And if not, what proof is there and what proof is necessary? Well, I wouldn't go as far as you did, Your Honor, in saying that whenever anyone in China acts in a humanitarian fashion, that it's a political gesture. However, in the context of Chinese-Korean, North Korean relations, again, I see these two countries as, you know, one rogue state kind of helping out another rogue state. I think it's a very politically charged area. All right. So let me change my question. Anybody who does a humanitarian act just like this with refugees, it's automatically a North Korean refugee. I would say that, you know, unless or until the Chinese government's position regarding the treatment of North Korean refugees were to change and become more consistent with international norms, I think it would follow that it would be – it could be and most likely would be perceived as a political gesture. And does – I'm sorry. Yes, I'm sorry, Judge. And does there have to be some evidence that this was known, that he was involved in this? Well, clearly there would have to be some evidence, and notwithstanding the board's characterization that the judge was just supposing or assuming that there's evidence, there really is evidence in the record. And first we have his credible testimony that he was told by his mother when he was in hiding that the police had come to his house looking for him, and that's at page 167 of the record. And secondly, we have the mother's letter, and whereas some of it might be as characterized in my colleague's brief as double or triple hearsay, the mother's letter regarding the police coming to visit is not based upon hearsay at all, and I believe that this is in the record. And so that, I guess, brings us to the question of standard of proof, and the court directed us to look at the Wang case. I'm sorry, the Kang case, and the government asked us to look at the Wang case. I think the Kang case is very, very clearly, obviously relevant in terms of the ferocity with which China goes after folks. And I have looked, but there's nothing in the record here to indicate that Mr. Lee had a similar fear of torture that Mr. Kang did. No, it's not a, well, I guess there's a fear of torture, but the claim as we're prosecuting it here, review is really in terms of withholding of removal. It's the same kind of burden of proof issue that one has when one is claiming torture or trying to make a claim under the torture convention. However, the Wang case, which my colleague suggested, and in tandem with the Kaplan case, which this court, this decision which came out this April, it seems to me that this court has clearly come down with the notion that the burden of proof analysis for either a cat claim or a withholding claim, not looking at asylum, but cat or withholding, is a factual, the standard of review for the board would be clear error because it's a purely factual matter. And once we acknowledge that the judge was not making this stuff up in terms of how he was, you know, factoring everything into his determination that he faced an objective, you know, a reasonably objective danger of harm if he were returned to China. Well, good. Let's hear from your opponent. Okay. I apologize for running over. No, no problem. Thank you. Mr. Harling. May it please the Court. My name is Nicholas Harling, and I represent the respondent, the Attorney General of the United States. In reversing the immigration judge's grant of withholding of removal, the board's analysis complied with this court's recent decision in the Wang case. The board took the immigration judge's finding of fact and applied it to whether, used it to apply whether it met the legal standard for withholding of removal. Mr. Lee, he feared, he testified that he feared prosecution and imprisonment if he was returned to China. And that fear, as the court previously noted, was on account that he violated a law against smuggling. Is there such a law? As Mr. Wang, I mean, excuse me, Mr. Lee testified that there was a law. The immigration judge's decision seems to accept that there was a law. The fact that Mr. Lee testified that his co-conspirator in the smuggling was arrested and sentenced to 10 years, all that tends to support the idea that there is a law, and the board decided that that was enough to determine that Mr. Lee was referencing a law of general applicability. Now, because it was a law of general applicability, that can still form the basis of a withholding claim. But to do so, Lee had the burden to show that the law was based on an enumerated ground and that the resulting punishment would be sufficiently severe. However, the board's opinion noted that there was no evidence that the law was based on an enumerated ground. In this case, Mr. Lee alleges a political opinion. And there was also no evidence that the Chinese government- Well, there was evidence that Mr. Lee adopted a course of action to assist North Korean refugees in China and that the policy of the Chinese government was to send the North Koreans back to Korea and not to aid them in any way, and that what Mr. Lee did then was in opposition to that policy. Correct, but Mr. Lee testified that he was motivated by humanitarian motives. Okay, but his humanitarian motives, although he did not say, I am crusading against this Chinese policy, his humanitarian motives were contrary to the policy of the government, and he pursued those motives knowing that there was a risk because of his belief in the humanitarian cause that he was pursuing. That's true, Your Honor, but even taking that as fact, Mr. Lee still has to show some evidence that the reason why the Chinese government would arrest him for violating that law would have to do with his desire to flaunt the Chinese government's decision to return- What about the Chang case? The Chang case. 1997, yes. Well, the Chang case is distinguishable because in Kang, the Kang involved torture. Not Kang, Chang. Oh, Chang, I'm sorry. Well, Chang laid out the standard for where violating a generally applicable law can be the basis of withholding or removal, and even under Chang's standard, Mr. Lee has not shown that. Well, Mr. Chang showed that he was expected by the Chinese government to report his employee, the people under him on the delegation who wanted to stay in the United States. Correct. And he did not do so because it offended his personal beliefs, and so he did not do so, and that was then considered an imputed political belief, right? In that case, that was considered, yes. But in this case, Mr. Lee has not argued imputed political opinion except to his brief to this court. And also, Chang was factually different because in Chang, the petitioner was concerned about what the Chinese government would do to his fellow citizens, and this is a little bit different in that- But he was concerned about what they would do to him because of his actions with his fellow citizens. That's true, but I think there was also evidence in Chang that- well, there was evidence that the Chinese government knew who the petitioner was and knew also that he had stayed in the United States and that someone else on the delegation had stayed in the United States. But Mr. Lee's mother said that the police had come to look for him, and Mr. Lee abandoned his car when he was being chased. That's correct. And the government is willing to recognize what the petitioner's attorney just argued, that there is actually, despite what the board's decision says, there is evidence in the record to show that the Chinese government was aware of his activities. However, that still doesn't prove that they wanted to arrest him because of his political opinion, and that is key in this case. And there's no evidence to suggest that the Chinese government did, that they were motivated to arrest him and prosecute him and potentially imprison him because of his political opinion about how the Chinese government dealt with the North Korean refugee situation. Except insofar as his activities, which he did for a humanitarian reason in opposition to the Chinese policy, violated a law of general application, and the punishment, which seemed imminent, was a very severe 10-year prison term. Well, Your Honor, as far as the severity of the 10-year imprisonment, I would note that under U.S. federal law, if you are arrested for smuggling someone into this country, you can be imprisoned for up to 10 years. He didn't smuggle him into the country. He provided transportation once the refugees were in the country. I don't think there's anything in the record that indicates he actually took them across the border. Once they got across, he offered them transportation to places where they could get shelter. Well, that's true, but I still don't believe that 10 years is that egregious in this context. But the board didn't make a determination on the egregiousness of the resulting punishment at any rate. But still, he has to show, the key to this case is Mr. Li has to show that he was motivated by a political opinion and that the Chinese government was going to persecute him on account or arrest him on account of that political opinion, and there's no evidence. A political opinion is an opinion against an official policy, right? It can be, yes, correct. Right, and his position, excuse me, which was his sincere position was in opposition to that policy. Does he have to know specifically it's in opposition to that policy? Does the Chinese government have to know? Does he, Mr. Li, in following a course of action, which he did here, of offering aid to refugees once they had come into China, does he have to understand that's against the Chinese policy or does he simply follow his personal belief? I think that it at least has to be objectively, possible to objectively view what he did as being politically motivated. Well, as being something done in opposition to the policy of the Chinese government. Correct, but that has, correct. But also, there has to be evidence that the Chinese government would persecute him because of that belief and not simply just because they have a desire to continue to protect their territorial integrity against non-citizens coming into the country. Well, petitioner's counsel says that there is some evidence with regard to that. Why is that insufficient in your view? It's insufficient because it's the government's position that the Chinese government, if they are interested in, if they came to his mother's house, it was to arrest him or investigate his alleged violation of a generally applicable law. They didn't come to the house and say, we want, you know, where's your son and why was he involved in political protest against the Chinese government. Is that level of specificity required here? I believe it is because otherwise there's nothing to suggest that the Chinese government isn't simply enforcing a generally applicable law that Lee himself admits that he violated. Well, isn't it in the record that the Chinese government is opposed to harboring refugees from North Korea? Yes, there is reference to that. That's true. There are no further questions from the panel. Because Mr. Lee failed to show that the Chinese government seeks to arrest him based on his violation of generally applicable law, he failed to establish a central reason for his relief would be on that basis. Thank you. Good. Hold on a second. Any other questions? Good. Mr. Harling, thank you very much. Thank you. Ms. Mitsuchi. Mr. Mitsuchi, can I ask you a question? You started out by talking about the law. Well, in your brief on page 11, you say while Lee did violate a generally applicable law, haven't you, aren't you conceding and don't you acknowledge there was a generally applicable law? If not, where do you contest that? That was sloppy writing, sloppy briefing on my part. Certainly in our BIA brief, I raised the issue that actually the trial attorney in Newark made the same argument that my colleague made that, you know, if he were in the United States, that there's some federal law that would, you know, handle this and he would be guilty of it. And we argued before the BIA that there is no evidence in the record that there is such a law. So the concession that we made in our brief before this court was inapt. Thank you. I should also point out to the court regarding the question of whether or not there is a generally applicable law, that just a day or so ago I came across a Ninth Circuit case. Now, let me ask another question. In the BIA's opinion, it says the respondent does not deny that he violated the laws of China that are applicable to all citizens by assisting in the illegal smuggling. Well, that's based on his, again, his inexpert testimony. And so for the board to then extrapolate and say, well, he really is violating the law. So our argument would be, and again, I just very briefly refer the court to a Ninth Circuit decision that was 2009. This is Lee v. Holder, 559 F. 3rd, 1096 at 1110, where in that case, one of the petitioners, this is a three-petitioner hearing, and one of the petitioners actually had a couple of expert witnesses on Chinese law, and they both said they were not aware of any such law against aiding refugees. You didn't argue the Ninth Circuit, Lee? I did not argue that, no. Regarding the question that was posed to my colleague regarding whether Lee knowing that he was doing something in violation of the law would be enough. I mean, I would argue that the fact that he was doing what he was doing surreptitiously. Well, in violation of the policy. I'm sorry. In violation of the policy, that what he was doing was not approved of by the officials of China, and he did everything he could to do it secretively and under the radar. That, to me, I think bolsters the notion that it was an oppositional political act, The last issue, though, that I wanted to raise again, it was raised briefly before, and also in a question to my colleague, regards the severity of the treatment. It seems to me that the severity of the treatment, as outlined in the Kang decision, can be, I think, an indication that even if there were a generally applicable law addressing this issue of aiding refugees, that the severity of the treatment would be a sign or evidence that the government, the Chinese government, was not just enforcing a generally applicable law, but that, again, the intensity of the enforcement, the torturous intensity of the enforcement, would be an indication of a political motive on the part of the Chinese government. I do not have any other questions, any other comments. If anyone has a question for me. Thank you very much. We thank both counsel for a very helpful argument. We will take the case under advisement.